UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 09-0207-03 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CLYDE O. SPATES (03) | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by Defendant Clyde O. Spates ("Spates"). Record Document 310. In his motion, Spates contends his counsel was ineffective for failing to object to testimony based on his right to confrontation and for failing to ask the Court to make a good cause finding for denying his right to confrontation. *See id.* The Government opposes Spates's motion and argues he is not entitled to any relief. Record Document 315. Spates replied to the Government's opposition. Record Document 320.

For the reasons assigned herein, Spates's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Document 310] is **DENIED** and **DISMISSED WITH PREJUDICE**.

## Background

On January 6, 2010, Spates pleaded guilty to one count of drug conspiracy, in violation of 21 U.S.C. § 846, and one count of possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Record Documents 14 & 69. The Court sentenced Spates to sixty months of imprisonment as to each count to run consecutively, for a total of 120 months, and five years of supervised

release. Record Document 92 at 2-3. On April 11, 2016, pursuant to Amendment 782 to the United States Sentencing Guidelines, the Court reduced Spates's term of imprisonment to a total of 113 months. Record Document 192. On February 28, 2019, Spates was released and his term of supervision commenced. *See* Record Document 267.

On March 30, 2023, Spates was arrested for possession with intent to distribute a schedule II controlled dangerous substance, possession of a firearm by a convicted felon, weapon use during drug distribution, no signal, no driver's license, and no seatbelt. *Id.* at 1. On April 4, 2023, the Court granted a Petition for Warrant or Summons for Offender Under Supervision for Spates based on the allegation that he violated terms of his supervised release. Record Documents 267 & 268.

At Spates's revocation hearing, the Government called ATF Task Force Officer Stacy Coleman ("Coleman") as a witness. Record Document 292 at 5. Coleman was not present for Spates's arrest. However, Coleman testified that he reviewed the Shreveport Police Department narrative reports of Spates's arrest and spoke with the arresting officer in the matter. *See id.* at 6-7. When the Government asked Coleman to testify about Spates's arrest based on his review of those reports and conversations with arresting officers, Spates's counsel objected to his testimony based on hearsay. *Id.* at 7. The objection was overruled, and Coleman proceeded to describe Spates's traffic stop and subsequent arrest. *Id.*

Coleman testified that during the traffic stop, officers found pills that appeared to be methamphetamine. *Id.* at 10-11. Laboratory testing provided to the Court by the U.S. Probation Office confirmed that the substance was methamphetamine. *Id.* at 13. Coleman

also testified that Spates made a post-*Miranda* admission that he knew the firearm was in the vehicle. *Id.* at 10. The Government then moved to introduce the underlying Shreveport Police Department reports and affidavits that Coleman reviewed in preparation for his testimony and the North Louisiana Criminalistics Laboratory Report provided by the U.S. Probation Office confirming that the substance was methamphetamine. *Id.* at 15; *see also* Record Document 287 (Government Exhibit List and Exhibits). Spates's counsel made a hearsay objection to the admission of these documents. Record Document 292 at 15. The objection was overruled and the documents were admitted. *Id.*

At the conclusion of Spates's revocation hearing, the Court found by a preponderance of the evidence that Spates committed two grade A violations and one Grade B violation of his supervised release. *Id.* at 16-17. The Court revoked Spates's supervised release and imposed a sentence of forty months imprisonment. Record Document 288 at 2. The Court did not impose any additional term of supervised release. *Id.*

Spates appealed the judgment on his revocation, arguing that the Court violated his confrontation rights under the Fifth Amendment Due Process Clause and Federal Rule of Criminal Procedure 32.1(b)(2)(C). Record Document 307. The Fifth Circuit found that because Spates objected to Coleman's testimony and the underlying documents based on hearsay, not on his right to confrontation, the confrontation objection was unpreserved. *See id.* at 2. Therefore, the Fifth Circuit reviewed for plain error. *Id.* The

Fifth Circuit concluded that the district court's failure to determine whether good cause existed did not constitute plain error. *See id.*

In the instant motion, Spates contends his counsel was ineffective for failing to make a specific confrontation objection and failing to request that the Court make a good cause finding. *See* Record Document 310. According to Spates, the Fifth Circuit opinion affirming his revocation "said that [his counsel] . . . did not make the proper objection on [his] behalf." *Id.* at 4. The Government opposes Spates's motion and argues he is not entitled to any relief.[1] Record Document 315.

## Law & Analysis

### I.     28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court if: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a). "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" *United States v. Cooper*, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)). After a defendant is convicted and exhausts the right to appeal, a court is

---

[1] The Government concedes that Spates's claim is not procedurally barred and that it does not constitute a successive § 2255 petition. *See* Record Document 315.

4

"entitled to presume that the defendant stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (internal marks omitted) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). The Court may consider an ineffective assistance claim raised for the first time on a § 2255 motion. *See United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).

To state a successful claim of ineffective assistance of counsel, a petitioner must demonstrate two things: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish either prong of the *Strickland* test will result in a finding that counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson,* 115 F.3d 276, 280 (5th Cir. 1997). The petitioner bears the burden of proof of showing both prongs are met. *See Strickland*, 466 U.S. at 687. A court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice without inquiry into the remaining prong. *See id.* at 689-94.

When determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[T]he defendant must overcome the presumption

5

that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999). Courts must be "highly deferential" to counsel's performance and make every effort "to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001).

## II. Analysis

Spates claims that his counsel was ineffective for failing to object based on Spates's right to confront his arresting officers under the Fifth Amendment Due Process Clause and Federal Rule of Criminal Procedure 32.1(b)(2)(C).

"Though the Confrontation Clause does not apply to revocation proceedings, '[b]ecause a person's liberty is at stake,' defendants have a due process right 'to confront and cross-examine adverse witnesses.'" *United States v. McDowell*, 973 F.3d 362, 365 (5th Cir. 2020) (alteration in original) (quoting *United States v. Grandlund*, 71 F.3d 507, 509-10 (5th Cir. 1995)); *United States v. Jimison*, 825 F.3d 260 (5th Cir. 2016). Thus, "a defendant in a revocation hearing has the 'qualified right to confront and cross-examine adverse witnesses.'" *United States v. Thompson*, 548 F. App'x 200, 203 (5th Cir. 2013) (quoting *Grandlund*, 71 F.3d at 510). This qualified right is also reflected in Federal Rule of Criminal Procedure 32.1(b)(2)(C), which provides that a defendant in a revocation is entitled to "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."

Because a defendant's right to confrontation during a revocation hearing is qualified, the district court "may deny confrontation if it specifically finds good cause for doing so." *McDowell*, 973 F.3d at 365 (citing *Jimison*, 825 F.3d at 263); *see also Jimison*, 825 F.3d at 263 (explaining that the "district court is required to make 'an explicit, specific finding of good cause' for not allowing confrontation of a particular witness" (quoting *Grandlund*, 71 F.3d at 510 n.6)). To determine whether good cause exists, the district court must "weigh the defendant's interest in confrontation of a particular witness against the Government's proffered reasons for pretermitting the confrontation." *United States v. Minnitt*, 617 F.3d 327, 333 (5th Cir. 2010). Where a district court is required to make a specific good cause finding but failed to do so, the error is considered harmless if good cause did in fact exist. *United States v. Elizondo*, 502 F. App'x 369, 372 (5th Cir. 2012).

7

If Spates's counsel had objected on the basis of Spates's confrontation rights, the Court would have been obligated to make an explicit finding as to whether good cause existed for not allowing confrontation of the law enforcement witnesses. Thus, to determine whether Spates was prejudiced by his counsel's failure to object based on his right to confrontation, the Court considers whether Spates has met his burden of showing that his counsel's objection would have had merit. In other words, the Court will determine whether Spates has shown that if his counsel made a specific confrontation objection, the Court would have found that good cause did not exist. The Court must conduct this balancing test "in the context of the specific facts." *Id.* at 373.

The Court begins by considering Spates's interests at issue. To begin, a defendant has a heightened interest in confrontation where a grade A violation is alleged. *United States v. Alvear*, 959 F. 3d 185, 189 (5th Cir. 2020). However, Spates's interest is "diminished" by other considerations. Specifically, Spates's interest is diminished because he did "not propose an alternative theory of events." *Id.* Where a defendant presents speculative theories "but offers no supporting evidence, he has no legally-significant interest in confrontation of witnesses adverse to his theories." *Minnitt*, 617 F.3d at 335. Here, Spates has not proposed any alternate theory—let alone one for which he has evidence. Spates has not denied the critical facts that formed the basis for his alleged violations nor proposed any alternative theory. He has not contested the facts that he had a firearm in the vehicle, that he had methamphetamine in the vehicle, or that he made a post-*Miranda* admission that he knew the gun was in the vehicle. The district court did not, and does not, have before it any contradictory evidence that would have

8

"ma[de] more important the issue of the credibility and knowledge of the witnesses who provided contradictory . . . testimony." *United States v. McCormick*, 54 F.3d 214, 225 (5th Cir. 1995).

Typically, the Court would next consider whether the Government had good cause for not calling the arresting officers. In determining whether the Government presents good cause, a "critical consideration is the indicia of reliability of the challenged evidence." *Elizondo*, 502 F. App'x at 373. The Fifth Circuit has explained that use of documentary evidence including affidavits and depositions are "entirely appropriate" substitutes for live testimony where that evidence's reliability is supported. *McCormick*, 54 F.3d at 226.

Of course, the Court's inquiry on this point is necessarily limited. Because the Court did not attempt to make a good cause finding during Spates's hearing (because there was no confrontation-based objection), the Government did not have an opportunity to explain its reasons for not calling the arresting officers at the hearing. However, because Spates's claim here is that his counsel was ineffective for failing to make a confrontation objection, it is his burden to show that a confrontation objection would have been sustained. *See Strickland*, 466 U.S. at 687. Spates's § 2255 motion does not provide any additional facts or support for his argument other than his general contention that his counsel should have made a confrontation objection. *See* Record Document 310. Therefore, the Court conducts its balancing test based on the facts as they developed during the revocation proceeding.

Given the centrality of the credibility and reliability of the evidence to this balancing test, the Court considers the specific testimony elicited from Officer Coleman and whether

9

and how that evidence was used in the Court's determination. During his testimony, Coleman testified about several key pieces of evidence, including that: (1) pills were found in the vehicle Spates was driving during the traffic stop; (2) those pills were confirmed to be methamphetamine through a laboratory report; and (3) Spates made a post-*Miranda* statement admitting he knew the firearm was in the vehicle. *See* Record Document 292 at 10-15. Spates's counsel had an opportunity to cross-examine Coleman about the information found in the reports. *Id.* at 12-14. Spates's counsel questioned Coleman about where the drugs were found, whether the officers physically saw any hand-to-hand transaction, who owned the vehicle, whether the alleged narcotics were confirmed to be methamphetamine, and whether Coleman himself was physically present or watched any body camera footage. *See id.* As explained *supra*, all the reports on which Coleman's testimony was based were admitted into evidence.[2] Record Document 287. The Court finds that the opportunity to cross-examine the arresting officer would not have provided any significant benefit to Spates. *See Elizondo*, 502 F. App'x at 373.

Ultimately, at the revocation hearing, the Court found that Spates committed a Grade B violation of his supervised release by possessing the firearm. *See* Record Document 292 at 17. The Court based its determination on the facts that the gun was found in plain sight and Spates's post-*Miranda* admission that he was aware of its

---

[2] Coleman's testimony was helpful in providing context for the arrest and for allowing Spates an opportunity to cross-examine him. However, the underlying reports alone provide sufficient evidence to prove beyond a preponderance of the evidence that Spates committed violations of his supervised release. *See United States v. Greer*, 809 F. App'x 260, 261 (5th Cir. 2020). Spates has done nothing to call into question the credibility or reliability of those reports.

presence. *Id.* Spates has made no argument as to why the reports and/or testimony establishing both of these facts lacks reliability in any way.

The Court also found that Spates committed two Grade A violations of his supervised release based on the fact that the substance, which was confirmed to be methamphetamine through laboratory testing, was found in the console of the car. *See id.* The Court found that Spates was aware the methamphetamine was present in the vehicle for a number of reasons, including that: (1) the officers interpreted what they saw to be a hand-to-hand transaction; (2) the vehicle had switched plates, which the Court interpreted as meaning "the driver of the vehicle was attempting to obstruct or to hide the identity of the car"; and (3) the gun itself was present in the car along with the methamphetamine. *Id.* at 17-18. The Court found this to be "more than sufficient to find that Mr. Spates was guilty of possession with intent to distribute methamphetamine" and unlawful possession of a controlled substance. *Id.* at 18.

The facts underlying the Court's determination do not rely on controverted statements from the arresting officers with one potential exception. The Court did consider the fact that the arresting officers witnessed what they appeared to be a hand-to-hand drug transaction. *See id.* at 17. The Court endorsed this observation because the officers are "skilled" and are trained on what a hand-to-hand drug transaction looks like. *Id.* However, the fact that the Court considered this evidence does not mean confrontation was necessary for two reasons. First, as explained *supra* and at sentencing, there was "more than enough evidence" to support the finding that Spates possessed with intent to distribute methamphetamine. *Id.* at 18.

But second and more importantly, even assuming *arguendo* that the Court ignored the evidence regarding the potential hand-to-hand drug transaction, and the grade A violation based on possession with intent to distribute methamphetamine was unsupported by the evidence, it would not have affected Spates's revocation. Spates was revoked for two grade A violations: (1) for committing a federal, state, or local crime, by possessing with intent to distribute methamphetamine, and (2) for unlawfully possessing and/or using a controlled substance. Record Document 288 at 1. If Spates had committed just one of those two violations, his supervised release would still have been revoked and his Guidelines range as to the judgment on the revocation would have been the same. *See* U.S.S.G. §§ 7B1.1(b), 7B1.4(a). Even if the Court found that Spates had not actually intended to distribute the methamphetamine, the uncontroverted evidence makes clear that he possessed it by having it in the console of the car he was driving during the traffic stop.

In sum, Spates has not challenged the credibility or reliability of the Government's witness. He points only to his right to confrontation, which as explained *supra*, is qualified in the context of a revocation proceeding. Spates does not propose any alternative theory of events, and all the evidence Coleman testified to was supported by the underlying documentation of Spates's arrest.

Spates fails to carry his burden of showing that his counsel was ineffective for failing to make a specific confrontation objection. Spates has not shown that the Court would not have made a good cause finding if asked to do so, and he has not shown he would therefore be entitled to confront his arresting officers. Accordingly, Spates was not

prejudiced by his counsel's failure to ask the Court to make such a finding. Spates's counsel was not ineffective and his claim fails.

## Conclusion

For the reasons assigned herein, Spates's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Document 310] is hereby **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Spates has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this 5th day of August, 2025.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE